UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. BERBERICH,

              Petitioner,

                               CASE NO. 05-CV-74678-DT

    v.                         JUDGE GEORGE CARAM STEEH

                               MAGISTRATE JUDGE PAUL KOMIVES

HELEN MARBERRY,

              Respondent.

_____/

## REPORT AND RECOMMENDATION

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Petitioner Michael J. Berberich is a federal prisoner currently confined at the Federal Correction Institution in Milan, Michigan.  He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a Bureau of Prisons (BOP) disciplinary finding which resulted, *inter alia*, in a loss of 27 days good conduct time.  The facts leading to this action are undisputed.

Following his plea of guilty to one count of maintaining a residence used for unlawful drug activity, 21 U.S.C. § 856, petitioner was sentenced by the United States District Court for the District of South Dakota to a term of 120 months' imprisonment, to be followed by a term of 3 years' supervised release.  Following his sentence, petitioner was incarcerated at the Yankton Federal Prison Camp in Yankton, South Dakota.  On March 13, 2005, petitioner was involved in a fight with another inmate, and was subsequently transferred to the Yankton Detention Center, where he was placed in

1

solitary confinement.  The center is operated by the Yankton Police Department.  On April 20, 2005, Steven Wuebben, the head jailer, notified BOP officials that petitioner was observed practicing martial arts in his cell on several occasions.  Lieutenant K. Jensen, a BOP official, reviewed a video clip taken on April 18, 2005, and concluded that the tape showed petitioner practicing side kicks, combination front kicks, turning side kicks, defensive stances, and raising his arms with closed fists. Lt. Jensen filed an incident report, charging petitioner with practicing martial arts, a "code 220" violation.  *See* Br. in Supp. of Gov't's Resp., Ex. 3.  The report was investigated by Lieutenant T. Gray.  After interviewing petitioner and a memorandum from the Yankton jailer who originally observed petitioner's actions, Lt. Gray concluded that the charge was warranted and referred the matter to the Unit Discipline Committee (UDC) for a hearing.  *See id.*, ¶¶ 24-27.

In the meantime, petitioner was transferred to FCI-Milan as a result of the earlier fight with another inmate.  On May 6, 2005, a hearing was held at FCI-Milan.  The hearing officer concluded that the matter should be referred to the Discipline Hearing Officer (DHO) for further action.  *See id.*, ¶¶ 17-21.  The BOP provided petitioner with written notice of the hearing and an explanation of his rights at the hearing.  *See id.*, Exs. 6 & 7.  The DHO hearing was held on May 26, 2005.  Petitioner admitted to performing kicks and punches, but denied that he was practicing martial arts.  After examining the available evidence, the DHO found petitioner guilty of practicing martial arts, and sanctioned petitioner with 30 days' disciplinary segregation (suspended pending 180 days clear conduct), disallowance of 27 days' good conduct time, and a 30 day loss of commissary privileges. *See id.*, Ex. 8.

On June 6, 2005, petitioner appealed to the North Central Regional Office, arguing that he did not intend to commit a prohibited act.  The Regional Director rejected petitioner's appeal on July 26, 2005.  *See id.*, Ex. 9.  Petitioner appealed that decision to the BOP's Office of General Counsel,

arguing that Code 220 fails to give adequate notice of the conduct it prohibits. This appeal was denied on October 31, 2005. *See id.*, Ex. 10.

On December 8, 2005, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner argues that his conduct did not violate Code 220, and that Code 220 violates due process principles by failing to adequately define the conduct prohibited by the regulation. Respondent filed its answer to the petition on January 27, 2006, and petitioner filed a reply on April 19, 2006. For the reasons that follow, the Court should deny petitioner's application for the writ of habeas corpus.

B.     *Legal Standard*

A petition for a writ of habeas corpus is the appropriate vehicle for a challenge to the revocation of good time credits. *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987); *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983); *cf. Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that the Due Process Clause provides certain minimum protections for inmates facing loss of good time credits as a disciplinary sanction. Specifically, "[w]here a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985) (discussing *Wolff*, 418 U.S. at 563-67).

In order to sustain a loss of good time credits, the decision of the prison officials need not comport with the requirement of proof beyond a reasonable doubt applicable in a criminal trial. Rather, "the requirements of due process are satisfied if some evidence supports the decision by the

prison disciplinary board to revoke good time credits." *Hill*, 472 U.S. at 455.  As the Court explained, this standard of proof is not demanding:

> Ascertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455-56.  Further, due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board," *id*. at 457, and a disciplinary finding can be upheld on even "meager" evidence, so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Id*.

C.    *Analysis*

Petitioner does not contend that he was denied any of the due process protection required by *Wolff*.  Likewise, petitioner does not directly contend that there was insufficient evidence to support the disciplinary finding.  Indeed, under the BOP officials' interpretation of Code 220 he cannot raise such a challenge.  Petitioner admitted to practicing kicks and punches, and a videotape showed him doing so.  This clearly constitutes "some evidence" supporting the disciplinary finding.  Rather, petitioner challenges the disciplinary finding on two different but related bases.  First, petitioner argues that what he was doing–practicing kicks and punches–does not constitute practicing "martial arts" under Code 220.  Second, he argues that Code 220 is unconstitutionally vague in describing the prohibited conduct.  The Court should conclude that each of these arguments is without merit.

1.    *Interpretation of Code 220*

Petitioner first argues that practicing kicks and punches does not constitute a violation of Code 220.  That regulation provides, in its entirety, that the following constitute prohibited acts in the High Category of the severity scale:

4

Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff).

28 C.F.R. § 541.13, Table 3.

As an initial matter, it is doubtful that petitioner can challenge the BOP's interpretation of Code 220 apart from his vagueness challenge. As the Third Circuit has explained,

when faced with any such questions regarding the proper application of prison misconduct regulations, there is a real danger that "legalistic wrangling over whether a rule was broken may visibly undermine the administration's position of total authority, necessary for security's sake." It is for this reason, among others, that courts have consistently concluded that interpretations by prison authorities must be upheld unless fair notice was clearly lacking.

*Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1983) (quoting *Meyers v. Alldredge,* 492 F.2d 296, 310 (3rd Cir.1974)) (citations omitted); *cf. Moorman v. Thalacker*, 83 F.3d 970, 974 (8th Cir. 1996).

In any event, the BOP's interpretation of Code 220 is reasonable. Code 220 prohibits not only "martial arts," but a wide array of combative practices, including boxing, wrestling, and, more broadly, "other forms of physical encounter." There was nothing unreasonable in the BOP's conclusion that the various kicks and defensive maneuvers practiced by petitioner fell within the broad swath of combative practices prohibited by Code 220. Petitioner's arguments to the contrary are unavailing.

Petitioner first argues that Code 220 does permit the use of a punching bag, and does not explicitly provide that the punching bag may not be kicked. Therefore, he argues, Code 220 does not prohibit the kicking of a punching bag as he was charged with doing. Grammatically, the language of Code 220 does not support this argument. The exception for use of a punching bag is not an exception applicable to the regulation as a whole, but is directly tied to the regulation's prohibition on boxing. And "boxing," both by definition and common usage, is understood to be fighting

5

2:05-cv-74678-GCS-PJK   Doc # 12   Filed 06/09/06   Pg 6 of 10   Pg ID 84

conducted solely with the fists. *See* OXFORD ENGLISH DICTIONARY, online edition, available at <<dictionary.oed.com>> (defining boxing as "[t]he action of fighting with fists; now usually applied to a pugilistic encounter in which the hands are covered with well-padded leather gloves."); MERRIAM-WEBSTER ONLINE DICTIONARY, available at <<www.m-w.com/cgi-bin/dictionary>> (defining boxing as "the art of attack and defense with the fists practiced as a sport.").

Petitioner also notes that the term "martial art" is included in a list of activities each of which is ultimately specified as a form of "physical encounter," and thus "martial art" should be read to mean a form of physical encounter. Because he was alone in his cell when the incident occurred, he argues, he did not engage in a "physical encounter" and thus could not be guilty of violating Code 220. However, the statute does not prohibit merely actual instances of using martial arts or other physical encounters. Code 220 also prohibits "demonstrating" and "practicing" such activities. Petitioner does not offer any reason to conclude that a prisoner could not practice martial arts, or even practice for a physical encounter, while alone.

In short, the BOP's interpretation of Code 220 as applied to petitioner's conduct was reasonable in light of the language of Code 220 and the common meaning of its terms.

    2.    *Vagueness*

Petitioner also contends that, if the regulation is properly read to cover the activity in which he was engaged, the regulation is impermissibly vague. The Court should conclude that this argument is without merit.

"It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed." *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993). *See generally*, *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "This principle applies within the prison setting." *Williams*, 1 F.3d at 716; *see also*, *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992). Nevertheless, as the

6

Sixth Circuit has explained, prison regulations are not held to the exacting standards of criminal laws:

> "Generally, due process prohibits excessively vague laws. However, the degree of specificity required in prison regulations is not the same as that required in other circumstances: Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

*Wolfel*, 972 F.2d at 717 (quoting *Meyers v. Alldredge,* 492 F.2d 296, 310 (3rd Cir.1974) (citations omitted)). The regulations need only provide "fair warning" of the prohibited conduct. *See id.* (citing *Grayned*, 408 U.S. at 108-09).[1]

Here, Code 220 clearly sets forth the conduct prohibited by the regulation. By its plain terms, it prohibits any demonstration, practice, or use of martial arts, boxing, and other aspects of physical encounter. While the regulation does not define "martial arts," and does not explicitly prohibit kicking, kicking is plainly encompassed by the ordinary understanding of both "martial arts" and "physical encounter." "A statute is not rendered vague merely because it fails to list all possible means of violating its dictates," *United States v. J.H.H.*, 22 F.3d 821, 828 (8th Cir. 1994), and this rule is particularly true in the context of prison regulations. *See Farmer v. Hawk*, No. 94-CV-2274, 1996 WL 525321, at *6 (D.D.C. Sept. 5, 1996) (citing *Wolfel*, 972 F.2d at 717; *Meyers*, 492 F.2d at 310).

---

[1] In examining Code 220 for vagueness, the Court is concerned only with whether the regulation provided sufficient notice to plaintiff that his conduct was prohibited. As this case does not involved conduct protected by the First Amendment, petitioner may not raise a facial challenge to Code 220. *See United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

For these reasons, the Court should conclude that Code 220 is not impermissibly vague as applied to petitioner's conduct, and therefore that he is not entitled to habeas relief on this claim.

Petitioner also contends that he lacked sufficient notice because the Yankton Detention Center's regulations do not prohibit the conduct in which he was engaged. However, the government notes that petitioner was informed that he was subject to the BOP's regulations because he was still constructively under the BOP's custody, *see* 28 C.F.R. § 541.10(a), and that petitioner was provided with a copy of the disciplinary regulations when he arrived at the Yankton Federal Prison Camp, *see* 28 C.F.R. § 541.11(d). Thus, the Yankton Detention Center's regulations are irrelevant. Accordingly, the Court should conclude that Code 220, as applied to petitioner, is not unconstitutionally vague.

3.      *Religious Exercise*

For the first time in his reply brief, petitioner contends that Code 220 violates the Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000bb-1 because it prohibits a Zen Buddhist prisoner from practicing his religion. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In relevant part, the RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb-1(a). Subsection (b) goes on to provide that a substantial burden on religious exercise is permissible if the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id*. § 2000bb-1(b).[2] Petitioner's claim fails, however,

---

[2]In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held that the RFRA, as applied to the states, exceeded the scope of Congress's powers under section 5 of the Fourteenth Amendment. *See id*. at 536. The Court therefore struck down the RFRA as applied to the states. The RFRA nevertheless remains valid as applied to the federal government. *See*

2:05-cv-74678-GCS-PJK   Doc # 12   Filed 06/09/06   Pg 9 of 10   Pg ID 87

because he does not himself claim to be a Buddhist here, nor did he ever do so in the administrative proceedings. Under the RFRA, petitioner bears the initial burden of demonstrating both that he is a member of the religion in question, and that the religion requires the exercise of religion burdened by the government. *See United States v. Valrey*, No. CR96-549Z, 2000 WL 692647, at *2 (W.D. Wash. Feb. 22, 2000) (citing *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *Karolis v. New Jersey Dep't of Corrections*, 935 F. Supp. 523, 526 (D.N.J. 1996). Only after petitioner meets this burden does the burden shift to the government to satisfy the compelling interest test set forth in subsection (b).

Here, petitioner has not alleged that he himself is a Zen Buddhist; rather, he contends only that Code 220 may burden the religious exercise of such prisoners. He has thus failed to satisfy his burden of demonstrating that the BOP officials substantially burdened his own religious exercise, as required by subsection (a) of the statute. This conclusion is confirmed by subsection (c) of the statute, which provides that a violation of the RFRA may be asserted as a claim or defense in a judicial proceedings by "a person *whose religious exercise has been burdened*." 42 U.S.C. § 2000bb-1(c). Because petitioner does not allege that his own religious exercise has been burdened, he is not entitled to relief on the basis of the RFRA.

D.     *Conclusion*

In view of the foregoing, the Court should conclude that petitioner was afforded due process of law in connection with his disciplinary hearing. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

---

*O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003); *Kikumura v. Hurley*, 242 F.3d 950, 958 (10th Cir. 2001).

9

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/9/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 9, 2006.

s/Eddrey Butts
Case Manager

10